IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| DUSTIN D. GIFFORD, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIV-14-201-F |
| ROBERT C. PATTON, et al., | ) ) | |
| Defendants. | ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Before the Court is the Motion to Dismiss and brief in support filed by Defendants Patton, Addison, Cagle, Dooley, Richardson, and Shelite (Doc. # 23). Although advised of his opportunity to respond to the Motion to Dismiss on or before August 22, 2014, and his obligations under Fed. R. Civ. P. 12 and 56 in responding to the Motion to Dismiss, Plaintiff has not responded or requested an extension of time to do so. For the following reasons, it is recommended that Defendants' Motion to Dismiss be granted and the cause of action be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

I. Complaint

In his Complaint filed March 3, 2014, Plaintiff asserts in count I that his due process rights were violated when his "security points" were increased for a Class X misconduct without

1

a hearing or notice. As background for this claim, Plaintiff alleges that he was "[f]alsely accused of introduction of contraband in[to] prison" and found guilty of this misconduct without a hearing.

In count II, Plaintiff asserts that his rights were violated under the Fourteenth Amendment's Equal Protection Clause and "conditions of confinement," which is construed to assert a claim under the Eighth Amendment for unconstitutional conditions of confinement. As support for the claims in count II, Plaintiff contends that he has been "placed in a maximum security facility with extremely violent offenders, putting me at risk of harm even death," that Defendant Warden Wilkerson "accepted and housed Plaintiff without review of transfer [packet]," and the population management director "processed [and] approved [packet] without review of same."

In count III, Plaintiff alleges claims of "slander, libel, [and] false defamation of character." As support for these claims, Plaintiff alleges that an unidentified individual or individuals "[s]lander[ed] my name as being involved in introduction of contraband" and "[t]old my wife I was transferred due to a stabbing and then she was told it was because of gang violence."

As relief, Plaintiff requests monetary damages, the removal of the "violations" from his prison record, that he be transferred from maximum security, and "termination of all involved Defendants."

II. Standard of Review

The Defendants seek the dismissal of Plaintiff's action against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. "The court's function

2

on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to make his or her "claim for relief . . . plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007. While "[t]echnical fact pleading is not required . . . the complaint must still provide enough factual allegations for a court to infer potential victory." Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008).

If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " Robbins v. Oklahoma ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at 570). Under this standard, the plaintiff's well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

Additionally, in considering a civil complaint filed *in forma pauperis*, the court has the responsibility to screen the complaint. 28 U.S.C. § 1915(e)(2). On review, the court must dismiss a cause of action filed *in forma pauperis* at any time the court determines the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or if the litigant seeks monetary relief from a defendant who is immune from such a claim. 28 U.S.C. §1915(e)(2)(B).

III. Eleventh Amendment Immunity

With respect to Plaintiff's claims against Defendants in their official capacities,

Defendants, who are all employed by the State of Oklahoma, seek dismissal on the basis of the immunity granted them under the Eleventh Amendment. States, state officials named in their official capacities, and "arms of the State" are entitled to immunity under the Eleventh Amendment unless the State has waived its immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(holding neither a State nor its officials acting in their official capacities are "persons" under § 1983); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)(holding "the principle of sovereign immunity is a constitutional limitation on the federal judicial power," and State's sovereign immunity may be waived only by unequivocal expression of waiver).

Although in some circumstances Congress may abrogate a State's sovereign immunity by legislation, 42 U.S.C. § 1983 has not abrogated the sovereign immunity of a State. See Quern v. Jordan, 440 U.S. 332, 345 (1979)(§ 1983 does not waive States' sovereign immunity). Oklahoma has not consented to a § 1983 suit by an individual against its state officials in their official capacities. See Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994)("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court.").

Thus, to the extent Plaintiff is seeking damages, the Eleventh Amendment bars Plaintiff's § 1983 action against Defendants in their official capacities,[1] and Defendants' Motion to

---

[1]Although "a suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment," Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1234 (10th Cir. 2010), Plaintiff has not alleged an ongoing violation of federal law.

4

Dismiss Plaintiff's claims against them in their official capacities should be granted.

IV. Personal Participation

Defendants seeks dismissal of Plaintiff's § 1983 claims against them on the ground that Plaintiff has not alleged each Defendant's personal participation in the alleged constitutional violations. "Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997); see Jenkins v. Wood, 81 F.3d 988, 994-995 (10th Cir. 1996)("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation.")(internal citation omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

A. Due Process Claim in Count I

In count I of the Complaint, Plaintiff alleges "I was given security points for a Class X misconduct, never found guilty, never given paperwork, never allowed a due process hearing for the alleged Class X misconduct." Plaintiff's allegations in count I are devoid of any assertion of any conduct by any Defendant named in this action. Further, the remaining allegations in the Complaint fail to provide sufficient allegations of personal participation by any Defendant in the alleged constitutional deprivation in count I.

Plaintiff has not disputed the assertion that Plaintiff's allegations are not sufficient to state a plausible claim against them, and the allegations in count I do not plausibly state a claim of personal involvement by any Defendant in the alleged due process deprivation. Therefore,

5

Defendants' Motion to Dismiss the claim against them in count I should be granted.

B. Equal Protection and Eighth Amendment Claim in Count II

In count II of the Complaint, Plaintiff alleges that he was transferred to a maximum security facility and that Defendant Wilkerson, the Warden at DCF, did not review the transfer packet. Plaintiff also alleges that an unidentified official approved the transfer packet without reviewing it. Defendants assert that Plaintiff has failed to allege a plausible constitutional claim in count II against them.

First, Plaintiff has not alleged any personal involvement by any Defendant other than Defendant Wilkerson in count II. Thus, the Motion to Dismiss by all Defendants except Defendant Wilkerson should be granted as to count II.

Secondly, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). State policies or regulations may, however, create a liberty interest in avoiding particular conditions of confinement when they " 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Id. at 221–23 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

The Supreme Court has admonished that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." Sandin v. Conner, 515 U.S. 472, 482 (1995). See Rezaq v. Nalley, 677 F.3d 1001, 1014 (10th Cir. 2012)(reiterating that courts must "remain mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts")(internal quotation marks and citation omitted).

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). A liberty interest may arise, however, "from state policies or regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)." Id. at 222. In Sandin, the Supreme Court made "clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life.'" Id. (quoting Sandin, 515 U.S. at 484).

Plaintiff has not alleged a specific alteration in the conditions of his confinement that could plausibly impose atypical and significant hardship upon him. Plaintiff vaguely asserts that he is being housed with violent offenders, but "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." Riccardo v. Rausch, 375 F.3d 521, 525 (7th Cir. 2004).

Plaintiff does not allege that any Defendant acted with deliberate indifference to his health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). At the most, Plaintiff has alleged that Defendant Wilkerson and another unidentified prison official were negligent in failing to review Plaintiff's transfer packet, and negligence is not sufficient to support a claim under § 1983 for deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 104-06 (1976). Accordingly, Defendants' Motion to Dismiss Plaintiff's claims against them in count II should be granted.

7

C. "Slander, Libel, false Deframation [sic] of Character" Claims in Count III

In count III of the Complaint, Plaintiff alleges that his name was slandered because an unidentified individual or individuals stated he was "involved in introduction of contraband in prison, with no truth or firm truth of such allegations" and because his wife was told he was transferred due to either a "stabbing" or "gang violence." In the background portion of the Complaint, Plaintiff alleges in connection with his claim in count III that he was "[f]alsely accused of introduction of contraband into prison" and was not given a hearing on the accusation prior to being transferred to a maximum security prison.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege he or she was deprived of a right "secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Amer. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Generously construing his *pro se* claim in count III, it appears Plaintiff has alleged a procedural due process deprivation for stigmatization.

" 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.' " Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)). "Damage to one's reputation alone, however, is not enough to implicate due process protections." Id. The plaintiff must demonstrate:

> (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that significantly altered [his or] her status as a matter of state law.

8

Id. (quotation marks omitted).

Plaintiff does not dispute the assertion in Defendants' Motion to Dismiss that Plaintiff has failed to allege who participated in the alleged slanderous statement. "Although the district court may not use a [Special] report to resolve disputed issues of fact, . . . , the court is allowed to use the report to identify and clarify the issues raised in the complaint. . . . [W]here . . . a plaintiff's complaint is comprised of inartfully drafted, unsupported conclusory allegations, a district court's request for and use of a [Special] report is not in error." Smith v. Okla. Dep't of Corr., 1994 WL 386020, *1 (10th Cir. 1994)(unpublished op.)(internal quotation marks and citations omitted).

In fleshing out the factual basis of Plaintiff's vague due process claim in count III, it is necessary to consider the attachments to the Complaint and documentary evidence in the Special Report that confirms Plaintiff's allegation he was transferred to a maximum security facility because he was found to have been involved in a scheme to introduce contraband into the prison.

Plaintiff has attached to the Complaint a copy of a grievance in which he requested to be "show[n] proof of the allegations of introduction of contraband and max [sic] points as I was not even found guilty or written up for such" and "reverse [transfer packet] to medium security." Complaint, att. 2, at 6. In this grievance, Plaintiff alleges that his case manager informed him that he was transferred to a maximum security prison because of his involvement in the introduction of contraband into the facility. Id.

The Special Report confirms that Plaintiff pled guilty to and was found guilty of a misconduct of Individual Disruptive Behavior in a hearing conducted on November 22, 2013, at the Davis Correctional Facility. Special Report (Doc. # 22), Ex. 3, at 2. The offense report

9

for this misconduct charge describes the incident that prompted the charge: "On 10-14-2013 at approx. 1200, I lt. Dooley was screening outgoing mail from Gifford . . . . In the letter, Gifford wrote, "Try to buy me a cheap AT&T cellphone" and "I really need to get $50.00 green dot." Id., Ex. 2, at 46.

The Special Report also confirms that in October 2013 a facility assignment form was completed by a facility classification committee. On this form, the committee requested that Plaintiff be transferred to maximum security level because he was "involved in the introduction of contraband. He is known to arrange for 'green dots' and cell phones to be introduced to the facility. Request transfer to OSP per Deputy Director Parker." Id., Ex. 2, at 12. Plaintiff's Custody Assessment Scale form dated December 24, 2013, reflects that he has 14 custody points, which placed him at the maximum security level. Id., Ex. 2, at 9. The form reflects that Plaintiff was "a new arrival" to the maximum security unit at Davis Correctional Facility. Id.

The Special Report also contains a grievance response from the reviewing authority dated January 9, 2014, which advises Plaintiff of the following response to his grievance:

> Offender Gifford inquired to know why he was at a Max Security Prison with only Medium Points.
> After an investigation of the matter, CM Carol Fergueson provided a FAF from Joseph Harp Correctional Center dated 10/17/13 that requested that Offender Gifford be transferred to Maximum Security due to his involvement of the introduction of contraband to the facility. JHCC requested he transfer to OSP. Due to Offender Gifford not signing this document, he can not be given a copy of it. CM Fergueson also provided a copy of Offender Gifford's Custody Assessment Scale printed on 12/24/13, which showed he had a total of 14 points. Copy of Custody Assessment is attached.
> The request to be told why Offender Gifford was at Maximum Security is GRANTED.

10

Id., Ex. 2, at 7.

Plaintiff signed this grievance response form reflecting that he received a copy of the response on January 9, 2014.[2] Plaintiff's conclusory allegation in count III that his reputation was harmed by the factually-supported reason given by prison officials for his transfer to maximum security does not state a due process claim against Defendants upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss the claim in count III should be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion to Dismiss (Doc. # 23) be GRANTED and Plaintiff's cause of action be DISMISSED without prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. It is further recommended that the dismissal of this cause of action count as one "prior occasion" or "strike" pursuant to 28 U.S.C. § 1915(g). See Hafed v. Fed. Bureau of Prisons, 635 F.3d 1172, 1176, 1177 (10th Cir. 2011)("When an action or appeal is dismissed as frivolous, malicious, or for failure to state a claim under 28 U.S.C. §1915(e)(2)(B), the dismissal counts as a strike" and "a dismissal under [28 U.S.C. ] § 1915A counts as a strike when the action was dismissed as frivolous, malicious, or for failure to state a claim . . . .").

---

[2] Plaintiff was advised on the grievance response form that he could appeal to the director or director's designee at the Oklahoma Department of Corrections ("ODOC") if he did so within 15 calender days of his receipt of the grievance response. The Special Report includes documentary evidence reflecting that Plaintiff attempted to appeal the grievance response but the ODOC administrative review authority determined that the appeal was submitted out of time because the "appeal was received in this office on 1/27/14." Id., Ex. 2, at 3.

Plaintiff is advised of the right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by   September 29th , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   8th    day of    September   , 2014.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE